UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BOBBY GUTIERREZ,
    Petitioner,

v.

                         Civil No. _____
                         Crim. No. 3:02 CR 27 (AHN)
                         Civil No. 3:03 CV 1622 (AHN)

UNITED STATES OF AMERICA,
    Respondent.

### MEMORANDUM OF LAW AND FACT IN SUPPORT OF
### MOTION PURSUANT TO 28 U.S.C. § 2255 6-3

COMES NOW the Petitioner Bobby Gutierrez to file this memorandum in support of motion pursuant to § 2255 6-3 in light of newly recognized right by the Supreme Court that has been enshrined in the common law ever since the Magna Carta.

### STATEMENT

The Petitioner has a § 2255 presently pending before this Court. The Petitioner files this instant § 2255 6-3 to protect the One Year filing limitation.

### ISSUE I

#### Arguments And Citations Of Authority

Mr. Gutierrez's Sixth Amendment right to a jury trial was violated when his sentence was based on facts that were not found by a jury, stipulated to in a plea agreement or the subject of a knowing and intelligent waiver at the Rule 11 colloquy.

The Petitioner asserts that he was sentenced under a penalty provision § 841(b)(1)(C) that was charged in the indictment incorrectly and illegally. 841(b)(1)(C) does not find the penalty for specific amounts of cocaine base only detectable amounts.

The Petitioner was held responsible for 26 grams of cocaine base at sentencing, a specific amount of cocaine base not a detectable amount.

The Petitioner asserts that 841(b)(1)(b) VII is the correct penalty statute for the amount of cocaine base that the Petitioner was held responsible for at sentencing. The correct penalty provision was left out of the indictment so that the AUSA and the Court could run the sentence as close to twenty years or to twenty years in this case. All of this was done as a tactical maneuver to enhance the sentence.

The Petitioner pled guilty to Count (5) Five of the indictment; 3.4 grams of crack, a specific amount. This sets a guideline level 22 minus 3 points for acceptance of responsibility. This calls for a sentence of Level 19, Criminal History Category 5, 63 to 78 months.

The benefit of the bargain in this case not putting the Government to the burden of proving their case was Counts One, Two, Three, Four, Six and Seven and Eight would be dismissed. The two point enhancement placed on the Petitioner at sentencing by the pre-sentencing officer, the AUSA and the Court that the attorney of record did not object to under <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S.Ct. 2348 (2000) was totally illegal and a blindside tactic not a benefit of a bargain.

According to the Supreme Court, a "waiver" is only "appropriate" if it is a "knowing and intelligent waiver of a known right." <u>Johnson</u> v. <u>Zerbst</u>, 304 U.S. 458, 464, 468, 58 S.Ct. 1019 (1938) (agreeing that "courts indulge every reasonable presumption against waiver," and holding that "proper waiver" is "an intentional relinquishment or abandonment of a known right or privilege").

The Petitioner asserts that at the time of his sentencing hearing before the Honorable Alan H. Nevas, date, September 19, 2002, the following exchange took place between the Petitioner and the Court, on page 9, line 14. Exhibit (A):

THE COURT: All right. Mr. Gutierrez, anything you want to say?

THE DEFENDANT: Yeah. I'd just like to say that, you know, when I signed my plea agreement I was in the county jail and I had no knowledge of the federal law, you know, so I was -- I feel like I was manipulated into signing that plea agreement, just for the fact that I had no opportunity to study my case, to know certain things that I know now, now that I'm at Wyatt Detention Center, and it's like I look at some of the rights I signed away and I -- like, I feel I would have never did that if I would have knew the things that I know now from being in the law library studying my case, and basically I'm just -- I'm sorry for, you know, all -- you know, my wrongdoings.

THE COURT: Well my understanding is that and I think I aught to put this on record, that earlier this morning I had a meeting in my chambers with the prosecutor and Mr. Dennis, your lawyer, and the probation officer and one of the officers from Stanford, and -- because I was concerned, when I read through this presentence report, at the sentence, which is a severe sentence based on the quantities involved, but I also was advised, Mr. Gutierrez, that you were given an opportunity to cooperate with the authorities and that you refused to do so.

3

>   Clearly, cooperation is always something that the Court considers in determining an appropriate sentence, and where there is significant cooperation that's useful and helpful to law enforcement, that's something that I will reward, but I was advised that you refused to cooperate, and I even suggested this morning that perhaps Mr. Dennis wanted to talk to you further, and was advised that there was no point in pursuing that.
>
>   So there were -- you did have an opportunity to help yourself at a much earlier stage in these proceedings, and apparently you were not interested. So these are sentencing guidelines. I'm bound by them. I can't change them, and the only leeway that I have with respect to these guidelines, is if the Government were to say to me that you had cooperated and given them significant, important, valuable information about other persons who were involved in narcotics trafficking in the lower Fairfield County area, but absent that kind of information, and a request on the part of the Government, there's nothing I can do about this sentence.
>
>   Mr. Finnerty, you want to be heard?
>
> MR. FINNERTY:  Just briefly, Your Honor. With respect to the Court's last remarks, the Government's understanding is that the Court's not penalizing or going to base its sentence upon the absence of cooperation, because that would be against the law.
>
>   Is the Government correct?
>
> THE COURT:  There's no -- all I suggested was the only way that I can deviate from the guidelines is if there were -- was a motion on the part of the Government, and there is no such motion.
>
> MR. FINNERTY:  And the Government's -- and the Court's aware that it has the discretion to depart on other basis if there's a record to depart, and there's simply no record.
>
> THE COURT:  There's no basis for any departure on -- for any other reason.

The Petitioner asserts that he advised the Court that he felt uncomfortable with the plea agreement, the waivers that were

4

unknowing and unintelligent. The Court advised the Petitioner that he was bound by the sentence because the guidelines were mandatory at the time. Also because the Petitioner did not tell and cooperate with the justice department, he was bound to sentence the Petitioner to the fullest extent of the guidelines.

Furthermore, a "stipulation" within the contemplation of Blakely and Booker, which waives Sixth Amendment rights and subjects a defendant to enhanced penalties should be construed narrowly, as the Sentencing Commission itself has done in U.S.S.G. § 1B1.2(a) -- the guideline section which, like in Blakely, permits the court to sentence a defendant for a more serious offense, where he has "stipulated" to that more serious offense. Under § 1B1.2, a defendant's admission do not constitute a "stipulation" unless they are contained in a plea agreement and "both the defendant and the Government or Justice Department "explicitly" agree that the factual statement or stipulation is a stipulation for [1B1.2] purposes.") U.S.S.G. § 1B1.2 and comment n.1 (emphasis added).

Accordingly, under § 1B1.2, mere acquiescence to a factual proffer does not amount to a "stipulation," to a more serious offense. See, United States v. Nathan, 188 F.3d 19, 199-201 (3rd Cir. 1999); United States v. Saavedra, 148 F3d 1311 (11th Cir. 1998); see, generally Braxton v. United States, 500 U.S. 344, 347, 111 S.Ct. 1854 (1991) (Court deferred to Sentencing Commission's definition of stipulation in § 1B1.2 through clarifying amendment).

The Petitioner's position in furtherance is the fact that 841(b)(1)(C) is the incorrect penalty statute for specific amounts of cocaine base. The total amount of crack cocaine attributed

5

to the Petitioner was 26.09 grams. The correct offense level would be a Level 27 minus 3 points for exceptance of responsibility a Level 24, Criminal History Category 5, 92-115 months, that's it in a nutshell. See, PSI, pg. 2, # 10.

The plea agreement nowhere states that the sentence in this case under the stipulation is for 1B1.2 purposes. As we all know relevant conduct under 6B1.4 under the mandatory sentencing scheme is no longer valid procedure.

In other words, it is totally unconstitutional. So to even offer a plea under an unconstitutional mandatory guideline system violates the Petitioner's substantial rights, a structural defect, plain error, that affects the fairness, integrity and public reputation of the judicial proceedings. See, Plea Agreement Exhibit (B), pg. 4 as to the Stipulation.

Based upon the record of the plea here, there was neither a waiver of rights or a formal "stipulation" by Mr. Gutierrez subjecting him to an enhanced sentence. At the Rule 11 hearing, the Court did not advise Mr. Gutierrez that he had a right to a jury determination beyond a reasonable doubt as to all elements of the offense intended to be punished. When the Court asked Mr. Gutierrez whether he agreed with the facts proffered, he responded "yes, Your Honor," such acquiescence was in no sense a stipulation or a "knowing and intelligent waiver" of Mr. Gutierrez's Sixth Amendment rights.

ISSUE II

Retroactivity Under Booker

Booker has arguably made its rules retroactive through its guideline clarifying amendments. It is well established, guideline clarifying amendments are retroactive. See, e.g., United States v. Garcia-Cruz, 40 F.3d 986, 990 (9th Cir. 1994) ("under the law of our Circuit, amendments to the Sentencing Guidelines which are 'clarifying' as opposed to 'substantive' may be given retroactive effect"); see also, United States v. Stinson, 30 F.3d 121, 122 (11th Cir. 1994) (per curium) (collecting cases).

Booker made no substantive changes to the guidelines. It merely interpreted them. Breyer, J., Slip Opinion, pg. 25, (our remedial interpretation of the sentencing act) advisory as "'Congress would have intended'" (Id. pg. 2) had it known its mandatory provision violated the Sixth Amendment's right to a jury trial. See also, Id., 22. ("Hence we have examined the statute in depth to determine Congress' likely intent in light of today's holding.") (emphasis original).

Booker's amendment accordingly merely clarified Congress' intent in light of its Sixth Amendment holding. Had Booker "superimpos[ed] its [Sixth Amendment] constitutional requirement announced [therein]" (Id., pg. 3) by "engrafting the Court's constitutional requirement onto sentencing statutes, [it] would [have substantively] destroy[ed] the system []" Id., pg. 9).

Such substantive change would have produced unintended punishment for different degrees of similar crimes (Id.) and vise-versa (Id., pg. 10) thus destroying Congress' goal of sentence uniformity (Id.)

7

Because the <u>Booker</u> sentencing reform act amendments did not change the guidelines substantively but merely interpreted them as advisory instead of mandatory, such amendment is only a clarifying amendment necessarily retroactive.

<u>Booker's</u> additional amendment to the sentencing appellate process changed nothing substantively. It only clarified the standard of review Congress would have preferred in light of its Sixth Amendment holding.

Retroactivity of such changes in the post conviction process is hardly a problem, <u>see</u>, e.g., <u>Collins</u> v. <u>Youngblood</u>, 497 U.S. 37, 111 L.Ed.2d 30, 110 S.Ct. 2715 (1990) (Stevens, J., concurring).

By remedially severing and excising parts of the Federal Sentencing Reform Act of 1984, asking for legislating. (<u>See</u>, e.g., <u>Freeborn</u> v. <u>Smith</u>, 69 U.S. 160, 168, 17 L.Ed. 922, 175, 2 Wall 160 (1865).

The Supreme Court in <u>Booker</u> modified the Federal Sentencing Guidelines nunc pro tunc to their November 1, 1987 effective date:

> We answer the question of remedy by finding the provision of the federal sentencing statute that makes the Guidelines mandatory, 18 U.S.C.A. § 3553(b)(1) (Supp. 2004), incompatible with today's constitutional holding. We conclude that this provision must be severed and excised, as must one other statutory section § 3742(e) (main ed. and supp. 2004), which depends upon the Guidelines' mandatory nature. So modified, the Federal Sentencing Act, <u>see</u>, Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 et. seq., 28 U.S.C. § 991 et. seq., makes the Guidelines effectively advisory.

<u>Booker</u>, Breyer, J., Slip Opinion, pg. 2.

8

Congress' power to make or amend remedial statutes retroactive absent Ex Post Facto problems is unquestionable. See, Freeborn v. Smith, 69 U.S. at 168, 17 L.Ed. at 923 ("We do not question the validity of retrospective statutes that are purely remedial"); see also, Frisbe v. Whitney, 76 U.S. 187, 19 L.Ed. 668, 9 Wall 187 (1869).

Retroactivity thereby is simply a matter of intent. See, e.g., Rivers v. Roadway Express, 511 U.S. 298, 311, 128 L.Ed.2d 274, 278 114 S.Ct. 1510 (1994) ("The question is whether Congress has manifested such intent."). Because in Booker, it is the Supreme Court which remedially modified the Sentencing Reform Act of 1984 as "Congress would have intended" (Breyer, Slip Opinion, pg. 25) had it known in 1984 its mandatory sentencing guidelines violated the Sixth Amendment (Id., pg. 22) ("We have examined the statute in depth to determine Congress' likely intent in light of today's holding.") (emphasis in original).

Booker's indisputable intent to modify the Guidelines nunc pro tunc is dispositive.

Lastly, even if the Supreme Court did not assume Congress' role in modifying the Sentencing Reform Act, in construing and interpreting it as "Congress would have intended" (Breyer, J., Slip Opinion, pg. 25) had it known its mandatory sentencing guidelines violated the Sixth Amendment (Id., pg. 22), the Supreme Court has necessarily made Booker retroactive. Like Booker, the Supreme Court in Patterson v. McLean Credit Union, 491 U.S. 164, 105 L.Ed.2d 132, 109 S.Ct. 2363 (1989) interpreted a 123 year old statute differently than appellate courts had done since its enactment.

9

As to <u>Patterson's</u> retroactivity, the Court said:

> A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to the construction[.]
>
> Thus, <u>Patterson</u> provides the authoritive interpretation of the phase make and enforce contracts in Civil Rights Act of 1866 before the [congressional] 1991 amendment [overruling] [Patterson's interpretation] provides the base line for our conclusion that applied to cases arising before that date.

<u>Rivers</u> v. <u>Roadway</u> <u>Express</u>, 511 U.S. 298, 313, 128 L.Ed.2d 274, 289.

Unlike <u>Rivers</u>, which rejected retroactivity of the relevant congressional amendment because it was so intended by Congress, the Supreme Court's judicial construction of interpretation of the Sentencing Reform Act of 1984, is inescapable because "the Court has no authority to depart from the congressional command setting the [November 1, 1987] effective date of [the] [law] it has enacted []" <u>Rivers</u> v. <u>Roadway</u>, 311 U.S. at 313, n.12, 128 L.Ed.2d 289, n.12.

The Petitioner asserts that the Court stated that by the guidelines being mandatory there was nothing he could do about the sentence. <u>Booker</u> made the guidelines advisory which is just as unconstitutional as the mandatory because the judge is still allowed to find facts over the jury verdict or what a defendant admits to.

The clarifying amendment makes <u>Booker</u> retroactive to the Petitioner to give the Court a chance to do right and see if it would impose the same sentence.

ISSUE III

The <u>Blakely</u>, <u>Booker</u> Violations In Mr. Gutierrez's Case
Constitutes Plain Error

The Fifth and Sixth Amendment <u>Blakely</u>, <u>Booker</u> violations in Mr. Gutierrez's case constituted plain error. <u>See</u>, <u>United States v. Olano</u>, 507 U.S. 725, 732, 113 S.Ct. 1170 (1993) (reversqal under plain error standard requires (1) error, (2) that is "plain", and (3) that affects substantial rights); the penalty statute that was charged in the indictment 841(b)(1)(C) was charged illegally.

The Petitioner was held responsible for 26 grams of crack cocaine base at sentencing. 841(b)(1)(b) should have been charged in the indictment. The 841(b)(1)(C) was charged so that the Petitioner could be enhanced illegally under the reasoning of the statutory maximum of twenty years not being violated. Petitioner under Level 22 minus 3 points for exceptance of responsibility, Criminal History Category 5, the correct sentence would be 63 to 78 months in prison. <u>See</u>, <u>United States v. Cotton</u>, 535 U.S. 625, 122 S.Ct. 1781, 1785-86 (2002).

Once plain error has been established, this Court can exercise its discretion to correct the error when it seriously affects the fairness and integrity of the judicial proceedings. <u>Olano</u>, 507 U.S. at 736.

The Supreme Court has stated that the appellate courts have been wrong in their interpretation of <u>Apprendi</u>, and the statutory maximum. The statutory maximum is the offense of conviction the jury verdict or what a defendant admits to. The Petitioner pled guilty to Count (5) of the indictment, the net weight of Count 5

is approximately 3.4 grams of cocaine base. 841(b)(1)(C) does not find the penalty for specific approximate amounts of crack cocaine. Only 841(b)(1)(A) and (B)(1)(b) find the penalty for specific approximate amounts.

The Court's violation of <u>Blakely</u> and <u>Booker</u>, was a violation of clear legal principle. <u>See</u>, <u>United States v. Brown</u>, 352 F.3d 654, 664 (2nd Cir. 2003) (plain error can arise from a deviation from "well-settled legal <u>principles</u> as much as well-settled legal <u>precedents</u>") (emphasis in original). This error was plain during the pendency of Mr. Gutierrez's on-going appeal under § 28 U.S.C. § 2255.

The Petitioner's attorney of record should have filed an appeal in this case. The error would have been plain during the pendency of Mr. Gutierrez's on-going appeal. <u>Johnson v. United States</u>, 520 U.S. 461, 468, 117 S.Ct. 1544, 1549 (1997). The Petitioner pled guilty to Count 5 of the indictment, 3.4 grams of crack for that count. The correct offense level should have been in all fairness, Level 22, 77 to 96 months with Criminal History Category 5.

The stipulation in the plea is not knowing or intelligent but the Petitioner was forced into the illegal mandatory guideline plea. <u>See also</u>, <u>United States v. Kramer</u>, 73 F.3d 1967, 1974 n.16 (11th Cir. 1996) ("We conclude that error is 'plain' under <u>United States v. Olano</u>, 507 U.S. 725, 113 S.Ct. 1770 (1993) where the 'plainness' of error becomes apparent on direct review.").

For plain error purposes, a defendant's substantial rights are affected when a sentence exceeds the authorized maximum. <u>See</u>, <u>United States v. Hester</u>, 287 F.3d 1355, 1357 (11th Cir. 2002).

In this case the only properly proven element was Count 5, Level 22 minus 2 points for acceptance of responsibility, Level 19, Criminal History Category 5, 63 to 78 months, but the Court sentenced Mr. Gutierrez at a Level 29, Criminal History Category 6. This increase abov e the statutrory maximum clearly affected Mr. Gutierrez's substantial rights as it severely increased the length of his incarceration and the time during which he was deprived of his basic liberties.

Since the judge was bound to a maximum penalty at Guideline Level 19, Criminal History Category 5 not 6 because the offense committed while the Petitioner was a juvenile was illegal, the judge clearly exceeded his authority by imposing a higher sentence. See, Blakely and Booker.

The fairness, integrity or public reputation of judicial proceedings "is seriously affected by this type of error. The judge's factfindings encroached on the role of a 'more independent' institution - the jury." Schriro v. Summerlin, 124 S.Ct. 2519, 2004 WL 1402732, perception of the independence of a tribunal certainly diminishes its public reputation. Thus, consonant with the dictates of the Fifth and Sixth Amendments and the ruling in Blakely and Booker, Mr. Gutierrez's sentence must be vacated.

### ISSUE IV

#### Specific Performance Of The Plea Agreement

The Petitioner asserts that specific performance is required in this case. The attorney of record should have protected the Petitioner.

The Petitioner pled guilty not making the Justice Department prove its case. The Petitioner should get the benefit from the bargain. Counts One, Two, Three, Four, Six and Seven and Eight were dismissed.

The Petitioner pled guilty to Count 5, that's it in a nutshell. The Petitioner does not want to replea, he admitted his guilt but the Justice Department used an unconstitutional guideline charging a 841(b)(1)(C) for a detectable amount of crack cocaine base, when the Justice Department knew full well it would use a specific amount of 26 grams to set the sentence. This type of conduct is illegal and violates the Fifth and Sixth Amendments.

Count Seven was dismissed so the adding of two levels for the gun proffered by the Justice Department was illegal and the Court accepting this unknowing and unintelligent waiver of a known right was illegal. Count Eight was dismissed.

Specific performance is required, see, United States v. Kurkculer, 918 F.2d 295 (1st Cir. 1990). The First Circuit holds that the remedy for a prosecutor's breach of a plea agreement cannot be requiring the defendant to replea.

The Petitioner's sentence was never in the applicable guideline range in accordance with Count 5 of the agreed plea with out the illegal stipulations. The attorney of record failed the Petitioner miserably by not protecting the Petitioner from not getting the full benefit from pleading guilty not putting the Justice Department to the burden of proving their case. See, United States v. Aquilar, 884 F.Supp. 88 (E.D.N.Y. 1995) When the defendant and the Government enter into a plea agreement pursuant to

Rule 11(e)(1)(C), specifying an agreed upon sentence, the court can sentence the defendant pursuant to that agreement notwithstanding the guidelines. The court is not required to identify a specific grounds for departure.

So we see where the assertion by the Court in Issue One is not true, the Court could have departed if it wanted to. See, United States v. Garcia, 956 F.2d 41 (4th Cir. 1992). Specific performance is required. See, United States v. Bruce, 976 F.2d 552 (9th Cir. 1992); see, United States v. Lewis, 969 F.2d 985 (11th Cir. 1992):

> The plea agreement provided that the government would make no recommendation concerning the actual sentence, but reserved the right to make known the facts of the offense to the sentencing judge. In a sentencing memorandum the government criticized the defendant for failing to cooperate or sever ties with his co-conspirators. The memorandum discussed at length the defendant's failure to cooperate despite being urged to do so and the fact that this showed that the defendant was not rehabilitated. The government also urged the court to consider the defendants failure to cooperate in setting a sentence so as to encourage others to cooperate. This violated the plea agreement in two respects, just, the memorandum amounted to a recommendation of a harsh sentence and the plea agreement prevented the government from doing this; second, the discussion of the defendant's failure to cooperate was not a statement of the "facts of the offense" which was the limit of the government's rights under the plea agreement.

The Petitioner asserts that the afforementioned is what was done to him at sentencing, see, Issue One, the exchange between the Court and the Petitioner and the AUSA. The only inference that can be drawn from this exchange is that the mandatory guidelines were used to punish the Defendant because he did not cooperate.

This is illegal activity on the part of the Court and the Justice Department. The Petitioner's sentence must be vacated and specific performance is required in line with the assertions and arguments hereinbefore.

## CONCLUSION

WHEREFORE, in light of the foregoing reasons the Petitioner respectfully submits that this Court should grant the Petition under § 2255-6-3, due to Booker's clarifying amendment:

(1) Order an evidentiary review consistent with the arguments herein, and

(2) There should be no probable cause for the Justice Department to appeal whatever this Court deems appropriate relief.

Done this 4 day of January 2006, at FCI Fort Dix, Fort Dix, New Jersey.

Respectfully submitted,

Bobby Gutierrez

CERTIFICATE OF SERVICE

I, Bobby Gutierrez, do hereby certify that the original plus two copies of Motion pursuant to § 2255-6-3, was sent to the Clerks office upon the address of United States District Court, U.S. Courthouse, 915 Lafayette Boulevard, Bridgeport, CT 06604, also a copy was sent to the U.S. Attorney's office upon the addres of 915 Lafayette Boulevard, Bridgeport, CT 06604, by U.S. First Class Mail, this 4 day of January 2006.

Bobby Gutierrez<br>
Reg. No. 14560-014<br>
FCI Fort Dix (West)<br>
P.O. Box 38<br>
Fort Dix, NJ 08640