*Exhibit (A)* 1

r-q-12

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,　　.　Case No. 3:02-CR-00027
　　　　　　　　　　　　　　.　(AHN)
　　　　　　　Plaintiff,　　　.
　　　　　　　　　　　　　　.　Bridgeport, Connecticut
　　　v.　　　　　　　　　　.　September 19, 2002
　　　　　　　　　　　　　　.
BOBBY GUTIERREZ,　　　　　　.
　　　　　　　　　　　　　　.
　　　　　　　Defendant.　　　.
. . . . . . . . . . . . . .

### SENTENCING HEARING
### BEFORE THE HONORABLE ALAN H. NEVAS
### SENIOR UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:　　　　　Office of the U.S. Attorney
　　　　　　　　　　　　　　By:  JAMES FINNERTY, ESQ.
　　　　　　　　　　　　　　915 Lafayette Boulevard
　　　　　　　　　　　　　　Bridgeport, Connecticut

For the Defendant:　　　　　Federal Public Defender
　　　　　　　　　　　　　　By:  THOMAS G. DENNIS, ESQ.
　　　　　　　　　　　　　　2 Whitney Avenue
　　　　　　　　　　　　　　Suite 300
　　　　　　　　　　　　　　New Haven, Connecticut

Court Monitor:　　　　　　　MS. JUDITH FAZEKAS

Proceedings recorded by electronic sound recording.
Transcript prepared by transcription service.

---

BOWLES REPORTING SERVICE
P.O. BOX 607
GALES FERRY, CONNECTICUT 06335
(860) 464-1083

*Exhibit (A)* 9

1   Honor.  One, in view of Mr. Gutierrez' financial

2   situation, I would ask the Court to waive a fine.  It

3   doesn't appear that he's able to pay a fine, and

4   probably will not be able to pay a fine anywhere in the

5   near future; and secondly I would ask the Court to

6   recommend a designation to Fort Dix FCI, which is a

7   institution in New Jersey that I think fits Bobby's

8   security classification, and also has the 500-hour drug

9   program that even though Bobby won't receive any

10  benefit in terms of a reduction in his prison time, I

11  think it's appropriate that he will obtain tremendous

12  benefit from.

13          Thank you, Your Honor.

14          THE COURT:  All right.

15          Mr. Gutierrez, anything you want to say?

16          THE DEFENDANT:  Yeah.  I'd just like to say

17  that, you know, when I signed my plea agreement I was

18  in the county jail and I had no knowledge of the

19  federal law, you know, so I was -- I feel like I was

20  manipulated into signing that plea agreement, just for

21  the fact that I had no opportunity to study my case, to

22  know certain things that I know now, now that I'm at

23  Wyatt Detention Center, and it's like I look at some of

24  the rights I signed away and I -- like, I feel I would

25  have never did that if I would have knew the things

Exhibit A    10

1    that I know now from being in the law library studying

2    my case, and basically I'm just -- I'm sorry for, you

3    know, all -- you know, my wrongdoings.

4        THE COURT:  Well, my understanding is that,

5    and I think I ought to put this on the record, that

6    earlier this morning I had a meeting in my chambers

7    with the prosecutor and Mr. Dennis, your lawyer, and

8    the probation officer and one of the officers from

9    Stamford, and -- because I was concerned, when I read

10   through this presentence report, at the sentence, which

11   is a severe sentence based on the quantities involved,

12   but I also was advised, Mr. Gutierrez, that you were

13   given an opportunity to cooperate with the authorities

14   and that you refused to do so.

15       Clearly, cooperation is always something that

16   the Court considers in determining an appropriate

17   sentence, and where there is significant cooperation

18   that's useful and helpful to law enforcement, that's

19   something that I will reward, but I was advised that

20   you refused to cooperate, and I even suggested this

21   morning that perhaps Mr. Dennis wanted to talk to you

22   further, and was advised that there was no point in

23   pursuing that.

24       So there were -- you did have an opportunity

25   to help yourself at a much earlier stage in these

Exhibit (A)    11

1    proceedings, and apparently you were not interested.

2         So these are sentencing guidelines. I'm

3    bound by them. I can't change them, and the only

4    leeway that I have with respect to these guidelines, is

5    if the government were to say to me that you had

6    cooperated and given them significant, important,

7    valuable information about other persons who were

8    involved in narcotics trafficking in the lower

9    Fairfield County area, but absent that kind of

10   information, and a request on the part of the

11   government, there's nothing I can do about this

12   sentence.

13        Mr. Finnerty, you want to be heard?

14        MR. FINNERTY: Just briefly, Your Honor.

15   With respect to the Court's last remarks, the

16   government's understanding is that the Court's not

17   penalizing or going to base its sentence upon the

18   absence of cooperation, because that would be against

19   the law.

20        Is the government correct?

21        THE COURT: There's no -- All I suggested was

22   that the only way that I can deviate from the

23   guidelines is if there were -- was a motion on the part

24   of the government, and there is no such motion.

25        MR. FINNERTY: And the government's -- And

*Exhibit (A)* [12]

1   the Court's aware that it has the discretion to depart

2   on other bases if there's a record to depart, and

3   there's simply no record.

4        THE COURT:  There's no basis for any

5   departure on -- for any other reason.

6        MR. FINNERTY:  Okay.  Thank you, Your Honor.

7        Mr. Dennis said that this is a good young man

8   who has made some poor choices, and if that were

9   correct, Your Honor, Mr. Gutierrez made poor choices 24

10  hours a day, seven days a week, because the police

11  officers are here today, would tell you, if you asked

12  them, that they saw him on the streets everyday, at all

13  hours of the day, hanging out with people who were

14  long-time associates, who were known drug dealers in

15  Stamford.

16        In fact, two days before this defendant is

17  arrested in December 2001, and I think it's important,

18  as Mr. Dennis knows, to put some perspective on this

19  case, two days before the Stamford Police Department

20  receives a citizen complaint that there are drugs in a

21  car, and two officers respond.  They run into the

22  defendant, and one of the officers says, "Hey, you

23  know, you need to get out of here, ba, ba, ba, ba, it's

24  not gonna be good for you," and the response is,

25  "You're gonna have to come to me with more than that

01/17/03  FRI 16:15 FAX 8604936269       FEDERAL DEFENDERS                              ☐002

**U.S. Department of Justice**  *Exhibit (B)*

*United States Attorney*
*District of Connecticut*

*Brien McMahon Federal Building*               (203) 696-3000
*915 Lafayette Boulevard, Room 309*
*Bridgeport, Connecticut 06604*                Fax (203) 579-5550

July 1, 2002

Sarah Chambers, Esq.
Assistant Federal Public Defender
Office of the Federal Public Defender
2 Whitney Avenue
New Haven, CT 06510

            Re:   United States v. Bobby Gutierrez
                  Docket No. 3:02CR27(AHN)

Dear Ms. Chambers:

     This letter confirms the plea agreement entered into between your
client, Bobby Gutierrez (the "defendant"), and the United States
Attorney's Office for the District of Connecticut (the "Government")
concerning the referenced criminal case.

The Plea and Offense

     The defendant agrees to plead guilty to Count Five of the
Indictment, which charges him with possessing with the intent to
distribute and distributing cocaine base, also known as crack cocaine,
in violation of Title 21, United States Code, Section 841(a)(1) and
(b)(1)(C).  He understands that the Government would be required to
prove beyond a reasonable doubt the following essential elements of
the offense to convict him of that offense:

     1.    That the defendant possessed cocaine base, also known as
           crack cocaine;

     2.    That the defendant knew that he possessed cocaine base, also
           known as crack cocaine; and,

     3.    That the defendant either actually distributed
           or intended to distribute the cocaine base, also known as
           crack cocaine.

The Penalties

     This offense carries a maximum penalty of twenty years
imprisonment and a $ 1 million fine.  Moreover, any sentence of

Exhibit (B)

administration of justice (Sentencing Guideline section 3C1.1);
or (3) constitute a violation of any condition of release. The
defendant expressly understands that he may not withdraw his plea
of guilty if, for the reasons explained above, the Government
does not make this recommendation.

### iii.    Stipulation

Pursuant to section 6B1.4 of the Sentencing Guidelines, the
defendant and the Government have entered into a stipulation
which is attached to and made a part of this plea agreement. The
defendant understands that this stipulation does not purport to
set forth all of the relevant conduct and characteristics that
may be considered by the Court for purposes of sentencing. The
defendant expressly understands that this stipulation is not
binding on the Court. The defendant also understands that the
Government and the United States Probation Office are obligated
to advise the Court of any additional relevant facts that
subsequently come to their attention.

### iv.    Guideline Calculation

The Government and the defendant calculate the defendant's
applicable Sentencing Guidelines to be at a range of 151 to 188
months imprisonment and a fine range of $15,000 to $150,000
pursuant to U.S.S.G. § 4B1.1(C).

The Government and the defendant calculated the defendant's
applicable Guideline range in following manner:  The base offense
level under U.S.S.G. § 2D1.1(c)(6) is 26. Two levels are added
under U.S.S.G. § 2D1.1(b)(1) because the defendant possessed a
dangerous weapon.  Three levels are subtracted under U.S.S.G. §
3E1.1 for acceptance of responsibility, as noted above, resulting
in a total offense level of 27.  A total offense level 27 with a
criminal history category V, which the parties calculate the
defendant to be based on the information currently available, is
a range of 130 to 162 months imprisonment (sentencing table) and
a fine range of $12,500 to $125,000 (U.S.S.G. § 5E1.2(c)(3)).

Because the defendant was convicted in the State of
Connecticut Superior Court on January 5, 1999 and December 19,
1997 of sale of narcotics in violation of Conn. Gen. Stats. §
21a-277(a), the defendant qualifies as a Career Offender pursuant
to U.S.S.G. § 4B1.1.  Because the statutory maximum penalty for
the offense to which the defendant is pleading guilty is twenty
years imprisonment, the base offense level is 32 pursuant to
U.S.S.G. § 4B1.1(C).  Three levels are subtracted under U.S.S.G.

4

*Exhibit C*

2

required pursuant to U.S.S.G. § 4B1.1, results in a Sentencing Guideline range of 151 to 188 months imprisonment and a fine range of $15,000 to $150,000; U.S.S.G. § 5E1.2(c)(3).

6.  Because of the offense level for a Career Offender is greater than the offense level otherwise applicable, U.S.S.G. § 4B1.1 applies. The Government and the defendant thus calculate that the defendant's applicable Sentencing Guidelines range to be at a range of 151 to 188 months imprisonment and a fine range of $15,000 to $150,000 pursuant to U.S.S.G. § 4B1.1(A).

**The Offense Conduct**

7.  The following offense conduct section was prepared after a review of materials provided by the Government including the been reports and affidavits. In addition, interviews have been conducted with the state and attorney, defense counsel, and the defendant. The defendant was interviewed in the presence of former Assistant Federal Public Defender Sarah Chambers at the Bridgeport Correctional Center in Bridgeport, Connecticut, on July

8.  The defendant and his counsel and agree to the following offense conduct that are not more defendant agreement to plead guilty to count five of the Indictment.

9.  On or about December 4, 2001 the defendant sold cocaine base, also known as crack cocaine to an undercover police officer in Stamford, Connecticut. The net weight of the amount sold was approximately 3.4 grams.

10. Between approximately October 2001 and December 2001, the defendant possessed with intent to distribute and distributed approximately 22.69 (net) grams of cocaine base. The total amount of cocaine base attributable to the defendant for guideline calculation purposes is 26.09 grams (net).

11. During the week of October 14, 2001, officers of the Stamford Police Department met with members of a Special Service Squad within the Fairfield County jurisdiction for the sole purpose of making undercover purchases of crack cocaine from the defendant. An undercover officer (UC) from the Special Service Squad was fitted with a listening device.

12. The UC called the defendant and made arrangements with him to meet to purchase an amount of crack cocaine. The UC arrived in front of 137 Spruce Street in