IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

vs.

Criminal No. 3:02cr27(AHN)
Civil No. 3:03cv1622(AHN)

BOBBY GUTIERREZ

## PETITIONER'S REPLY TO THE GOVERNMENT'S RESPONSE TO HIS MOTION FOR SENTENCE REDUCTION PURSUANT TO 18 UNITED STATES CODE SECTION 3582(c)(2)

Petitioner Bobby Gutierrez ("Gutierrez"), proceeding pro se, respectfully submit this Reply to the Government's brief of April 2, 2008 filed in response to his Motion for Modification of Sentence pursuant to 18 U.S.C. § 3582(c)(2), which is pending before this Court.

The government, in its brief, contends that Amendment 706 is inapplicable to Gutierrez's sentence, and that this Court is without authority to amend Gutierrez's current prison sentence in a motion pursuant to § 3582(c)(2), despite the advisory nature of the Federal Sentencing Guideline scheme as constructed by the Supreme Court in its binary opinion rendered in United States v. Booker and United States v. Fanfan, 543 U.S. 220 (2005).

For the reasons stated below, Gutierrez respectfully urge

1

this Honorable Court to reject the government's contention that "[t]he new crack guidelines are inapplicable to [Gutierrez] because they do not reduce [his] sentencing guideline range," and that the Supreme Court's decision rendered in <u>Booker</u>, and recently in <u>United States v. Kimbrough</u>, 128 S.Ct. 558 (2007) and <u>Gall v. United States</u>, 128 S.Ct. 586 (2007), has no bearing on this Court's discretion to reduce a petitioner's prison term in light of Amendment 706 in a motin filed under 18 U.S.C. § 3582(c)(2).

A.    **ARGUMENT**

The government's contention that this Court may not reduce Gutierrez's prison sentence because the change affecting the crack guidelines brought about by Amendment 706 does not apply to Gutierrez's sentencing guideline range fails on several fronts. First, majority of the case-law relied upon by the government in support of its contention are all dated pre-<u>Booker</u> and are therefore inapplicable under the advisory sentencing scheme that now exist. Under <u>Booker</u>, all guidelines are advisory only, and any holding that renders the guidelines mandatory contravenes with the Sixth Amendment as outlined by the <u>Booker</u> Court. See, <u>Booker</u>, 543 U.S. at 232; see also <u>Kimbrough</u>, 128 S.Ct. at 566-575. In other words, "[a] district judge must include the Guidelines range in the array of factors warranting consideration, but the judge may determine that, in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing." Id.,

citing 18 U.S.C. § 3553(a); see also Montes-Pineda, 445 F.3d at 378 ("the applicable Guidelines range is only one factor that sentencing courts must consider in imposing a proper sentence"), citing Booker, 543 U.S. at 259-60.

Secondly, as the government concedes, when considering a motion under § 3582(c)(2), the district court is required to consider "the factors set forth in section 3553(a) to the extent that they are applicable" when deciding whether to reduce a previously imposed sentence in light of an amended guideline range. (See, § 3582(c)(2)); Cf. Rita v. United States, 127 S.Ct. 2465, 2468 (2007) (holding that district courts may conclude that the guideline sentence fails to reflect § 3553(a) considerations, reflects an unsound judgment by the Sentencing Commission, does not treat defendant characteristics in a proper way, or that a different sentence is appropriate "regardless"); see also 28 U.S.C. § 994(o) (provides the court with the discretion to "reduce the term of imprisonment after considering the factors set forth in section 3553(a)"). However, any limitation on the sentencing court's ability to consider the § 3553(a) factors in imposing a new sentence is a violation of the court's duty under § 3582(c)(2). Once the authority to reduce a prison sentence under § 3582(c)(2) is triggered by a retroactive guideline, the sentencing court must consider **all** relevant statutory sentencing criteria currently in existence, even if such criteria did not exist at the time of the original sentencing and is otherwise unrelated to the triggering amendment. See, United States v. Mihn, 134 F.3d 1353, 1355 (8th

Cir. 1998) (in a § 3582(c) resentencing, district courts can apply § 3553(f)'s safety valve to reduce sentence below the mandatory minimum because § 3553(f) is a general sentencing consideration that the district court must take into account in exercising its present discretion to resentence under § 3582(c)(2)); United States v. Reynolds, 111 F.3d 132 (6th Cir. 1997) (defendant eligible for § 3582(c)(2) resentencing is also eligible for reduction based on § 3553(f) because it applies "to all sentences that are imposed" after the statute's effective date); Settembrino v. United States, 125 F.Supp.2d 511 (S.D. Fla. 2000) ("when faced with a Section 3582(c)(2) resentencing, a district court may consider grounds for departure unavailable to a defendant at the original sentencing, including safety valve relief of Section 3553(f)").

Third, whenever a defendant such as Gutierrez seeks a reduction in his prison sentence in a motion under § 3582(c)(2) based on an amendment to the guidelines that has been made retroactive by the Sentencing Commission, under U.S.S.G. § 1B1.11(a) & (b)(2), "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced[,] unless doing so violate the ex post facto clause." See, United States v. Forty Estremera, 489 F.Supp.2d 468 (D. Puerto Rico, 2007) (observing that "when [a district] court reconsiders [a] sentence pursuant to § 3582(c)(2)---in a proceeding that occurs **solely** because the Sentencing Commission lowered the applicable sentencing range---the court ... ha[s] [the] discretion to impose a non-guidelines sentence"), citing United States v.

Hicks, 472 F.3d 1167, 1171 (9th Cir. 2007) (holding that, "Booker applies to resentencing proceedings brought under the statute authorizing courts to modify a sentence based on subsequent lowering of Sentencing Guidelines range by Sentencing Commission, and thus the newly calculated Guidelines range is advisory"); see also United States v. Mateo-Espejo, 426 F.3d 508, 510, note 1 (1st Cir. 2005) (absent an ex post facto problem, the district court **must apply** the version of the Sentencing Guidelines in effect on the date of resentencing) (emphasis added). Thus, the version of the guidelines to be applied in this case is the current advisory guidelines as established under Booker.

Lastly, the government's reliance on the amended commentary of § 1B1.10(b)(2)(A) issued by the Sentencing Commission which seeks to limit the amount of reduction in a defendant's sentence the court may impose in light of Amendment 706, and, generally, limits the court's discretion under the advisory sentencing regime, essentially ignores the constitutional question at issue under the pre-Booker mandatory guideline scheme, which has since been eliminated by the Booker/Fanfan remedial decision.

The Supreme Court has explicitly held that the guidelines are no longer binding. Moreover, the Court noted Kimbrough that although "Booker rendered the []Guidelines advisory, [Booker also] preserved a key role for the Sentencing Commission" in that "the Commission's recommendation of a sentencing range [in the ordinary case] will 'reflect a rough approximation of sentences that **might** achieve § 3553(a)'s

5

objectives'." Kimbrough, 128 S.Ct. at 574, citing Rita v. United States, 127 S.Ct. 2456, 2465 (emphasis added). The Court further stated that "a district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge finds a particular case 'outside the heartland' to which the Commission intends individual Guidelines to apply." Id., citing Rita, 127 S.Ct. at 2465.

In a similar vein, the Ninth Circuit, in United States v. Hicks, observed that "under Booker, to the extent that the policy statements [issued by the Sentencing Commission] would have the effect of making the guidelines mandatory (even in the restricted context of § 3582(c)(2)), they must be void." Id., at 1171. In that sense, the amended commentary of § 1B1.10(b), which aims to limit this Court's discretion in imposing a sentence that is "sufficient but not greater than necessary" to achieve the § 3553(a)'s purposes, must be read as advisory under Booker. The revised commentary of §§ 1B1.10(b)(1) and (b)(2) basically instructs sentencing courts to treat § 1B1.10 as mandatory, which in turn renders § 2D1.1 (and for that matter § 4B1.1) mandatory in the context of a § 3582(c) resentencing, in violation of Booker and Kimbrough.

Furthermore, the revised commentary of § 1B1.10(b) also violates the Commission's own statutory obligations under its enabling statutes, 28 U.S.C. § 991 and § 994. The Ninth Circuit in deciding Hicks, supra, addressed these concerns regarding restrictions and limitations being placed against the sentencing court's discretion to achieve the sentencing objectives set

forth in § 3553(a) and reasoned that Booker made clear that no such restrictions is to be imposed, "even in the restricted context of § 3582(c)(2)." See id. Since the Supreme Court decided Booker, every attempt to transform the now advisory sentencing regime into its former mandatory nature have been rejected by the Supreme Court. (e.g., Rita, Kimbrough and Gall). The Ninth Circuit's decision in Hicks, as well as the Third Circuit's decision in United States v. Ricks, 494 F.3d 394 (3rd Cir. 2007), are consistent with the Supreme Court's quest to maintain the advisory nature of the Federal Sentencing Guidelines. This advisory scope also bestow upon sentencing courts the discretion to impose sentences that are "sufficient but not greater than necessary" to achieve the purposes of sentencing set forth in § 3553(a). The government's contention in this matter that Hicks is flawed ignores the constitutional concerns that were once at issue pre-Booker, which resulted in the advisory guideline scheme that is in place today.

Under section 3582(c)(2), this Court is required to "consider the factors set forth in § 3553(a) to the extent that they are applicable" when reducing a defendant's sentence based on a reduced guidelines range. Because the guidelines range affecting crack cocaine sentences have been reduced by virtue of Amendment 706, and because Gutierrez is presently serving a sentence based on a guideline calculation for crack cocaine, that range is implicated in the reduction authorized under Amendment 706. Notwithstanding the government's contention regarding Gutierrez's career offender status,

Gutierrez's crack conviction/sentence is the predicate to § 4B1.1; without it, there is no § 4B1.1(b) enhancement.

Moreover, Gutierrez's enhancement under § 4B1.1 is not his sentence. His sentence was calculated under § 4B1.1 based on a determinable amount of crack cocaine, and subsequently enhanced under § 4B1.1 because he had two qualifying prior convictions at the time he committed the instant offense. If Gutierrez had been convicted and sentenced based on a powder cocaine violation where the amount of powder cocaine equalled the amount of crack that his current sentence was calculated upon, his enhancement under the career offender provision would certainly have been substantially lower than the enhancement he received as a result of his crack cocaine violation. In other words, had the 26.09 grams of crack cocaine attributed to Gutierrez at sentencing, which resulted in a base offense level of 28 under § 2D1.1(c)(6), was actually 26.09 grams of powder cocaine, under the 100:1 differential, that amount would have yielded a substantially lower base offense level under § 4B1.1(b) conversion table.

The point: Amendment 706's aim is to narrow the disparity between crack and powder cocaine by bringing about a "modest change" in the existing disparity that is seen as "only ... a partial remedy" to the problems generated by the 100:1 crack/powder cocaine differential. Any attempt to narrow the 100:1 disparity gap affects all sentences that are based on crack cocaine violation. This rationale is consistent with the Supreme Court's decision in both <u>Kimbrough</u> and <u>Gall</u>. Therefore,

if the government's contention is true that <u>Hicks</u> (474 F.3d 1167) is flawed, then it must follow that <u>Kimbrough</u> and <u>Gall</u> are also flawed.

Assuming that the government's contention is correct regarding the limitation placed upon the district court's discretion via the revised commentary of § 1B1.10(b)(2), the amended version of § 1B1.10 would require the district court to grant, at most, a two-level reduction in every case even if the resulting sentence would still be greater than necessary to serve the purposes of sentencing or create unwarranted disparity or otherwise contradict an applicable § 3553(a) factor. Because the amended guidelines still results in sentences that are based on an unwarranted disparity and fails to serve the purposes of sentencing, a district court cannot automatically assume, as the Commission would have it, that a sentence under the amended guideline satisfies § 3553(a). Therefore, because this Court has a statutory obligation to consider the applicable § 3553(a) factors when imposing a new sentence under § 3582(c)(2), the Sentencing Commission's policy statement to the contrary is invalid. See e.g., <u>Neal v. United States</u>, 516 U.S. 284, 290-95 (1996) (Commission "does not have the authority to amend [a] statute" by purporting to interpret it in ways contrary to the construction given it by the Supreme Court, and that Court will "reject [the Commission's] alleged contrary interpretation"); see also <u>Stinson v. United States</u>, 508 U.S. 36, 38 (1993) ("commentary in the Guidelines Manual that interprets or explains a Guideline is authoritative **unless it violates the**

Constitution") (emphasis added); Hicks, 474 F.3d at 1172-3 ("to the extent that policy statements are inconsistent with Booker by requiring that the Guidelines be treated as mandatory, the policy statements must give way").

Importantly, Gutierrez is not seeking an extension of a Supreme Court decision by referencing Booker in his petition, like those defendants who argued for Apprendi rights at a § 3582(c)(2) hearing in cases like United States v. McBride, 283 F.3d 614 (3rd Cir. 2000). Rather, he is seeking to be sentenced under § 3553(a) as required by Supreme Court law. Section 3582(c)(2) clearly require the court to impose a sentence based upon its evaluation of the § 3553(a) factors---a process that cannot be circumscribed by a policy statement issued by the Sentencing Commission. Once the authority to reduce a sentence under § 3582(c)(2) is triggered by a retroactive guideline, the sentencing court must consider **all** relevant statutory sentencing criteria currently in existence, even if such criteria did not exist at the time of the original sentencing and is otherwise unrelated to the triggering amendment. See, Mihn, 134 F.3d at 1355.

Moreover, because the "mandatory, the-above-the-statutory-minimum Guideline range for drug trafficking penalties which reflect the [100:1 crack/powder cocaine ratio] are not [binding] after Booker," (quoting, United States v. Gunter, 462 F.3d 248, 249 (3rd Cir.)), this Court may exercise its discretion to impose a non-Guideline sentence after considering the factors promulgated in § 3553(a). Gunter, 462 F.3d at 248 (concluding

that, "once between the minimum and maximum statutory ranges of 21 U.S.C. § 841(b), there is nothing special about the crack cocaine Sentencing Guidelines that makes them different, or less advisory, than any other Guidelines provision."). Presented with the question of how a district court may consider the 100:1 crack/powder cocaine disparity among the factors outlined in § 3553(a), the Third Circuit found that the district court's assertion that "the 100:1 crack/powder cocaine differential in the Sentencing Guidelines takes away its discretion to sentence at anywhere less than the minimum range calculated under the Guidelines" is error. Gunter, 462 F.3d at 248.

Following this same theme, the Fourth Circuit observed that:

> Of course, it does not follow that **all** defendants convicted of crack cocaine offenses receive a sentence within the advisory sentencing range. We certainly envision instances in which some of the § 3553(a) factors will warrant a variance from the advisory sentencing range in a crack cocaine case.

United States v. Eura, 440 F.3d 634 (4th Cir. 2006) (emphasis in original); see also United States v. Castillo, 460 F.3d 337, WL 2374281, at ** 14-17, 21 (2nd Cir. 2006) (rejecting the district court's substitution of a 20:1 ratio for the 100:1 ratio, but emphasizing that it was not holding "that district courts must always sentence within the ratio provided by the Guidelines; that would indeed be error under Booker.").

The Sentencing Commission itself has repeatedly acknowledged that sentences under the crack guideline "fails to meet the

11

sentencing objectives set forth by Congress" in § 3553(a) and cause unwarranted disparity among drug offenders, even with the two-level reduction. It is the Commission, after voting unanimously that Amendment 706 should be applied retroactively, that described the "modest change" brought about by Amendment 706 as "only ... a partial remedy" for the problems generated by the crack/powder cocaine disparity.

That said, the Commission's revision of § 1B1.10, which attempts to limit this Court's statutory obligation under § 3582(c)(2) by undermining the use of its sentencing discretion in the present advisory regime established under <u>Booker</u>, contravenes with the Supreme Court's constitutional interpretation that forbid a guideline system that is rigid and unpredictable. <u>Booker</u> has made clear that the guidelines cannot be applied as mandatory in some circumstances and not others. The Supreme Court has specifically made this point clear.

In deciding <u>Booker</u>, the Court rejected the government's suggestion that it "render[] the Guidelines as advisory in any case in which the Constitution prohibits judicial factfinding" but "leave them as binding in all other cases..." In making this determination, the Court reasoned that:

> "[W]e do not see how it is possible to leave the Guidelines as advisory in some cases and binding in other cases. For one thing, the Government's proposal would impose mandatory Guidelines-type limits upon a judge's ability to reduce sentences, but it would not impose those limits upon a judge's ability to **increase** sentences. We do not believe that such one-way levers are compatible with Congress' intent."

12

Booker, 543 U.S. at 206 (emphasis in original).

Again in Kimbrough, the Court rejected the government's argument that § 2D1.1 and, more specifically, the crack guidelines, can be interpreted in any way that renders it effectively mandatory:

> "[U]nder Booker, the cocaine Guidelines, like all other Guidelines, are advisory only; and ... the Court of Appeals erred in holding the crack/powder disparity effectively mandatory."

Kimbrough, 128 S.Ct. at 566.

The reasoning reached by both the Booker Court and the Kimbrough Court regarding decisions that would render the guidelines effectively mandatory is true for crack cocaine sentences that were enhanced under § 4B1.1, and for the amended commentary of § 1B1.10 issued by the Sentencing Commission, which "would impose mandatory Guideline-type limits upon a judge's ability to reduce sentences" and would render § 2D1.1 "effectively mandatory" for crack defendants such as Gutierrez who seek resentencing under § 3582(c)(2) in light of Amendment 706. The amended commentary of § 1B1.10 therefore violate Booker and Kimbrough, and is void as a matter of law. See, Neal, 516 U.S. at 290, 295 (Commission "does not have the authority to [effectively] amend [a] statute" by "interpreting" it in ways contrary to the construction given it by the Supreme Court, and the Court will "reject [the Commission's] alleged contrary interpretation"); Stinson, 508 U.S. at 38 ("commentary in the Guidelines Manual that interprets or explains a Guideline is

authoritative <u>unless it violates the Constitution</u>") (emphasis added); <u>Hicks</u>, 472 F.3d at 1172-73 ("to the extent that policy statements are inconsistent with <u>Booker</u> by requiring that the Guidelines be treated as mandatory, **the policy statement must give way**").

Requiring the guidelines to be treated as advisory in a § 3582(c)(2) resentencing proceeding does not run afoul of cases holding that <u>Booker</u> is not retroactive. Likewise, a section 3582(c)(2) proceeding renders the judgment no longer final for the limited purpose of imposing a reduced sentence. See, 18 U.S.C. § 3582(b) ("Notwithstanding the fact that a sentence to imprisonment can subsequently be modified pursuant to the provisions of subsection (c) ... a judgment of conviction that includes such a sentence constitutes a final judgment for all **other** purposes") (emphasis added). Stated differently, a judgment of conviction **does not** constitute a final judgment for purposes of modifying the sentence pursuant to § 3582(c)(2) and thus the finality concerns against applying <u>Booker</u> retroactively do not exist in that limited context. <u>United States v. Goines</u>, 357 F.3d 469, 478 (4th Cir. 2004) ("the disruption of finality engendered by a broad interpretation of § 3582(c)(2) is consistent with the legislative design," which anticipates that sentences will be reopened whenever a guideline amendment is given retroactive effect).

As stated above, the Sentencing Commission has already acknowledged that the crack amendment represents only a modest interim measure that does not fully rectify the problems with

crack sentences, including that they "fail[] to meet the sentencing objectives set forth by Congress" in § 3553(a)(2). By revising § 1B1.10 to restrict a court's ability to even consider this acknowledged failure of the guideline **as amended** to satisfy § 3553(a) when imposing a new sentence under § 3582(c)(2), the Commission has violated its obligation under 28 U.S.C. § 994(a)(2) to write policy statements that "further the purposes set forth in section 3553(a)(2)." (28 U.S.C. § 994(a)(2)).

The Commission has also violated its obligation to establish sentencing policies and practices that assure that the purposes of § 3553(a)(2) are met, avoid unwarranted sentencing disparities, maintain sufficient flexibility to permit individualized sentences, and reflect advancement in the knowledge of human behavior as it relates to the criminal justice process. See, 28 U.S.C. § 991(b)(1)(A)-(C). If guideline commentary "is at odds with" the plain language of 28 U.S.C. § 994, the guideline commentary "must give way." United States v. LaBonte, 520 U.S. 751, 757 (1997). The amendments to § 1B1.10 are thus void as an improper exercise of Commission authority and a violation of the remedial holding in Booker, and therefore should be rejected. See, Booker, 543 U.S. at 265 ("We do not doubt that Congress, when it wrote the Sentencing [Reform] Act, intended to create a form of mandatory Guideline system.").

Thus, this Court is free to reject the Commission's amendment to § 1B1.10 and proceed with imposing a reduced

15

sentence (or a non-guideline sentence) in this case that fully takes into consideration the factors set forth in § 3553(a), inasmuch as such a sentence is "sufficient **but not greater than necessary** to satisfy the purposes of sentencing." See § 3553(a).

Finally, the concerns raised by the government as to an element of unfairness in applyong "Booker to .. those defendants whose sentences are being lowered under Amendment 706," (Gov. Resp. at 17), as stated above, Gutierrez is not seeking an extension of the Supreme Court's decision announced in Booker. Instead, he is seeking re-sentencing under the advisory guideline scheme as required by Booker, and made possible under Amendment 706.

Additionally, that Gutierrez and other crack defendants are the only ones in a position to benefit from Amendment 706 under the current advisory guideline scheme constructed by Booker is neither unfair nor conducive to producing "unwarranted sentencing disparities [that] Congress sought to eliminate in the Sentencing Reform Act," (Gov. Res. at 17-18), because Congress, being fully aware of the Commission's amendment to the crack guideline and the concomitant impact that the advisory guideline scheme would render on the amendment, chose to remain silent rather than thwarting the Commission's efforts on the basis of preserving the integrity of the Sentencing Reform Act.

Likewise, the element of unfairness that the government alludes to would have been true for those defendants sentenced for marijuana and LSD violations and were afforded the benefit of a sentence reduction when the Commission issued amendments

16

that lowered their guideline range, and made those amendments retroactive. Cf. <u>Forty Estremera</u>, 498 F.Supp.2d at 471 ("an impositiion of a Guideline sentence here without applying their newly advisory role would be violative of the established principle that the Guidelines as they exist at the time of sentencing is the version to be applied.").

B.  **CONCLUSION**

Based on the foregoing argument, Gutierrez respectfully urge this Court to reject the government's contention that he is not entitled to a sentence reduction under 18 U.S.C. § 3582(c)(2) in light of Amendment 706, and grant his motion seeking a reduction in his sentence of 151 months.

Respectfully submitted,

Dated: April 10, 2008.

Bobby Gutierrez (pro se)
Register No. 14560-014
FCI McKean
P.O. Box 8000
Bradford, PA 16701

17

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the attached PETITIONER'S REPLY TO THE GOVERNMENT'S RESPONSE TO HIS MOTION FOR SENTENCE REDUCTION PURSUANT TO 18 U.S.C. § 3582(c)(2) was sent via First Class mail on this 10 day of April, 2008 to the following attorney for the government:

Rahul Kale
Assistant U.S. Attorney
915 Lafayette Blvd.
Bridgeport, CT 06604

Bobby Gutierrez (pro se)
Register No. 14560-014
FCI McKean
P.O. Box 8000
Bradford, PA 16701